IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAWN L. KITTELSON,

                              Plaintiff,                  OPINION AND ORDER

     v.

                                            08-cv-501-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Dawn L. Kittelson seeks reversal of the commissioner's determination that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the administrative law judge failed to properly consider her mental impairment, failed to make a proper credibility finding, failed to correctly determine her residual functional capacity and made an improper step five finding. I find that the administrative law judge properly considered plaintiff's mental impairment, properly assessed her credibility and properly determined her residual functional capacity. Further, I find that his step five determination was supported by

1

substantial evidence.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):


FACTS

A.  Background and Procedural History

Plaintiff was born on January 14, 1955.  AR 94.  She has a high school education and completed one and one-half years of college.  AR 328.  Plaintiff worked for almost 25 years as set-up technician in a plastics factory.  AR 166.

Plaintiff applied for disability insurance benefits on June 16, 2004, alleging that she had been disabled since August 21, 2001 because of fibromyalgia, chronic fatigue and restless leg syndrome.  AR 173.  After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 2, 2006 before Administrative Law Judge David K. Gatto.   On November 16, 2006, the administrative law judge issued a written decision, finding plaintiff not disabled.  AR 35-44.

On February 23, 2007, the Appeals Council remanded the case to the administrative law judge to give further consideration to the opinion of consulting psychologist Marcus P. Desmonde and to obtain additional evidence concerning plaintiff's adjustment disorder with depressed mood.  On June 12, 2007, a second hearing was held before Administrative Law

2

Judge Gatto.  He heard testimony from plaintiff, AR 328-50, and a neutral vocational expert, AR 351-56.  On July 17, 2007, the administrative law judge issued his decision, finding again that plaintiff was not disabled.  AR 18-28.  This decision became the final decision of the commissioner on October 4, 2007, when the Appeals Council denied plaintiff's request for review.  AR 9-11.

## B. Medical Evidence

On June 18, 2001, plaintiff saw physician's assistant Brad Krueger, complaining of pain over all her body, headaches and fatigue.  He found nothing abnormal when he examined plaintiff, but he noted that she appeared quite depressed.  He prescribed amitriptyline for her.  AR 249.

On August 20, 2001, plaintiff was examined by neurologist Dr. David A. Nye.  He observed tenderness in two of the 18 diagnostic fibromyalgia tender points and some mild arthritic changes in the small joints of her hands.  Nye also noted that plaintiff had excessive daytime sleepiness of unknown etiology.  He recorded plaintiff's weight as 225 pounds.  AR 240-41.  Nye did not think plaintiff had fibromyalgia but suspected she had a sleep disorder.  AR 241.  Plaintiff underwent a sleep study, which was normal but showed periodic limb movements during sleep. On the basis of the study, Nye prescribed Mirapex, a drug used to

3

treat restless leg syndrome.  AR 239.  Nye adjusted plaintiff's dosage of Mirapex over the next few months.  AR 236-237.

Although plaintiff maintained telephone contact with Nye concerning her medication prescriptions, she did not return to see him for two years.  When she saw him February 17, 2003, Nye noted that plaintiff had tenderness to palpation in four of 18 fibromyalgia tender points.  He indicated that plaintiff had possible fibromyalgia and periodic limb movement disorder.  He noted that plaintiff weighed 220 pounds and was not getting any regular exercise.  Plaintiff reported that she had recently increased her caffeine intake as a means to lose weight.  Nye recommended that plaintiff begin daily gentle low impact aerobic exercise and taper off caffeine completely.  He re-started her on Mirapex because her prescription had expired in August 2002.  AR 231, 235.  On March 19, 2003, he referred plaintiff to occupational medicine for evaluation.  AR 230.

On June 25, 2003, plaintiff was examined by Dr. Donald T. Bodeau in the occupational medicine clinic.  She reported that she had been completely unable to work since April 20, 2001 because of chronic fatigue, fibromyalgia, restless leg syndrome, sleep deprivation and low back pain with radicular syndrome.  Plaintiff reported taking care of seven to 16 Lhasa Apso dogs, including breeding and showing them, and taking care of tropical fish.  She also reported that she rarely took naps.  Bodeau noted that plaintiff had no medical insurance.  AR 223.

4

After examining plaintiff, Bodeau noted that plaintiff's affect was normal and that she was significantly deconditioned.  AR 224.  She had normal range of motion of all joints with good muscle tone and strength with no point tenderness.  Her gait and station were normal and she could squat and rise without difficulty.  AR 225.  Bodeau diagnosed plaintiff with probable depression, diffuse myalgias that did not meet the criteria for fibromyalgia and limb movement disorder of sleep.  AR 225.  In his opinion, plaintiff was not disabled.  He noted that there was no evidence of any musculoskeletal disorder that would affect plaintiff's employability and it was clear she was working at the light to medium level at home.

Bodeau recommended that plaintiff see a psychiatrist and obtain counseling and more appropriate treatment for her mood disorder.  Although he recognized that it would be difficult with her uninsured status, in his view it was imperative for plaintiff to obtain such treatment.  Bodeau suggested Dr. Charles Mayo as someone whom plaintiff could contact for possible psychiatric treatment.  AR 225.

On July 16, 2003, plaintiff saw Krueger for a routine physical.  Plaintiff reported that she had been told by an occupational therapist that there was nothing wrong with her physically and that she needed to see a psychiatrist.  Krueger noted that plaintiff had a history of depression and took Zoloft, Serzone and Temazepam.  AR 245.

Three years later, on August 2, 2006, plaintiff was seen by Dr. John C. White at Turtle Lake Medical Associates.  He noted depression, mood changes and obesity.  He took

5

plaintiff off Zoloft and Mirapex and prescribed Cymbalta and Requip for her depression and restless leg syndrome.  AR 305-06.  In October 2006, White took plaintiff off Cymbalta and re-started her on Zoloft at her request.  AR 312.

## C.  Consulting Physicians

On August 23, 2004, Dr. Quingquan Fu performed a consultative examination of plaintiff for the state disability agency.  Plaintiff reported suffering from fatigue and generalized achiness.  She estimated her tolerance for activity as 30 minutes of cleaning and two hours of shopping.  She reported that she had to rest at least two hours after cleaning for 30 minutes.  AR 260.

Fu noted that plaintiff was obese, with a weight of 217.6 pounds and body mass index of 39.8.  On examination, Fu noted that plaintiff had symmetric tender points in her shoulders, upper back, mid-back, lower back, hips and lower leg.  He diagnosed her with chronic fatigue, generalized pain disorder, fibromyalgia, restless leg syndrome and obesity. He noted that plaintiff's overall clinical picture was consistent with fibromyalgia.  He indicated that plaintiff was able to do some chores around the house and appeared able to perform some light duty with intermittent rest. Fu was not sure how much her weight contributed to her complaints.  AR 260-62.

6

On March 19, 2007, plaintiff was examined by Dr. Larry C. Studt, an occupational medicine specialist, at the request of the state disability agency.  He noted that Requip and Cymbalta had not been effective for plaintiff's restless leg syndrome and fibromyalgia and that plaintiff had decreased her work load around her home.  He observed that plaintiff was obese and had tenderness in the upper and lower back.  Studt noted that plaintiff weighed 243 pounds and her body mass index was 45.2.  Plaintiff had difficulty rising from a squatting position, bending, getting on and off the examining table, hopping and squatting. Regarding plaintiff's ability to perform work related activities, Studt found that she could sit with a change in position after 30 to 45 minutes; stand with a change in position after 30 to 45 minutes; lift up to 20 pounds; walk up to a half a mile; and had to change position every two hours when traveling.  AR 318-21.  He concluded that her obesity played a role in her lack of stamina and mobility.

On August 31, 2004, plaintiff was seen by psychologist Marcus P. Desmonde for a social security disability evaluation.  Plaintiff reported chronic pain, fatigue and memory and concentration problems.  She took Zoloft and Mirapex.  Desmonde noted that plaintiff did some light housework, drove to the grocery store to pick up a few items, got together with her friends for lunch and raised birds and dogs for sale.  Desmonde diagnosed plaintiff with adjustment disorder with depressed mood with a Global Assessment Functioning Score of 55 to 65, chronic pain and chronic fatigue.  (The GAF scale reports a clinician's assessment

7

of the individual's overall level of functioning.  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).  A GAF of 55-65 indicates mild to moderate symptoms or functional limitations. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (Text Revision).)  He concluded that plaintiff appeared capable of understanding simple to moderately  complex instructions and carrying out physical tasks within guidelines set by the treating physician.  Although he found plaintiff capable of interacting briefly with co-workers, supervisors and the general public, he concluded that she could not currently tolerate the stress and pressure of full-time competitive employment.  AR 263-65.

On September 5, 2004, state agency physician Ricardo Altmonte completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as fibromyalgia and chronic fatigue.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and sit, stand or walk six hours in an eight-hour work day.  AR 266-69.  A second state agency physician completed a physical residual functional capacity assessment for plaintiff, listing her diagnoses as fibromyalgia and obesity, and agreeing with Altmonte concerning plaintiff's limitations.  AR 291-98.

Two non-examining state agency psychologists determined from their review of the record in late 2004 and early 2005 that plaintiff had an adjustment disorder with depressed mood, but the impairment was not severe.  They concluded that plaintiff had mild

difficulties in the activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace and no episodes of decompensation. AR 270-90.

On March 9, 2007, plaintiff had a second consultative psychological examination by Desmonde. (This examination was ordered by the local disability agency in connection with a new application for social security benefits that plaintiff filed after the first adverse decision from the administrative law judge.) Plaintiff reported that sometimes she gets her household chores done and sometimes she does not. She reported washing clothes, washing dishes, light housekeeping and cooking. She no longer showed her dogs. She indicated that she would like to see a psychologist or psychiatrist but she only had Badger Care and few places would accept it. She took medications for depression and insomnia.

Desmonde observed that plaintiff had good hygiene and was dressed appropriately. She was cooperative, spontaneous and uninhibited during the interview and denied hallucinations or delusions, although she admitted to feeling depressed because of her fibromyalgia. Desmonde detected no clear deficits in her memory, concentration, judgment or insight. He diagnosed plaintiff with depressive disorder and assigned a Global Assessment Functioning score of 55 to 65. Desmonde concluded that plaintiff appeared capable of understanding simple to complex instructions but might have difficulty carrying out tasks with reasonable persistence and pace because of chronic pain. Also, he concluded that

9

plaintiff appeared capable of interacting with co-workers, supervisors and the general public but might have difficulty tolerating the stress and pressure of full time competitive employment primarily because of her chronic and severe pain.  AR 313-16.

### D.   Hearing Testimony

1. October 2, 2006 hearing

Plaintiff appeared without a lawyer or non-lawyer representative.   AR 360-61.  Plaintiff testified that she had been diagnosed with fibromyalgia, restless leg syndrome and chronic fatigue and had pain all over.  She testified that she took Zoloft for depression but that recently she had been unable to renew that prescription.  She took Mirapex for restless legs and Temazepam to help her sleep.  She testified that she had been without health insurance since losing her job.  AR 365-66.  She testified that in the preceding three years she had been to the doctor only once and that her doctor renewed her prescriptions over the telephone.  AR 364.

Plaintiff testified that she gardened, did woodburning, took care of her six dogs and sold birds.  AR 368-69.  She had driven to California with her parents but had to stop every two hours.  AR 371.  She testified that she had trouble remembering names of people and places.  Plaintiff estimated that she could sit at the computer for an hour or so before she had to get up.  AR 372-73.

Plaintiff's husband testified that he had been married to the plaintiff for 32 years and that he worked as a toy salesman.  He testified that plaintiff helped him stock stores about five times a month but that she was not reliable.  He also testified that most days she could not keep up with the housework.  AR 377-78.

2.  June 12, 2007 hearing

Plaintiff was represented by a lawyer at the second hearing.  AR 325.  Plaintiff testified that she had not worked anywhere since August of 2001, but that she had helped her husband set up toy displays as recently as three months before the hearing.  AR 329.  Plaintiff had four Lhasa Apso dogs but said that she no longer bred or sold them.  AR 333.  She also testified that she had 20 or 30 birds at home and had sold birds in March and April.  AR 334-35.

Plaintiff testified that she had gone to a dog show the weekend before the hearing and that she had handled one dog.  She testified that in the past year she had gone to two dog shows.  AR 336-37.  She had not done any wood burning for about a month.  AR 337.  She testified that she does very little housework and does not exercise.  She estimated that she could walk for about a half hour and sit for 30 to 45 minutes.  She took Mirapex, Temazepam and generic Zoloft, which helped her somewhat and did not have any side effects.  AR 339.  She explained that she did not see a doctor more often because she could

not afford to pay the bill and she had no medical insurance.  She said that if she could, she would like to have physical therapy and see a psychologist.  AR 345.

Plaintiff testified that on average, she has one or two bad days a week when she does nothing but sleep.  AR 347.  Even on her good days, she spends about six hours in an eight-hour period lying down.  AR 348.  Plaintiff testified that she had difficulties remembering names and maintaining attention.  AR 349.  She testified that if she were stationary for too long she would fall asleep.  AR 350.

The administrative law judge called Sydney Bauer to testify as a neutral vocational expert.  He asked the expert to assume an individual of plaintiff's age, educational and vocational background with impairments of fibromyalgia syndrome; degenerative disc disease of the lumbo-sacral spine with status post laminectomy in 1999; restless leg syndrome; diffuse myalgias; status post carpal tunnel syndrome with release surgery; status post cholecystectomy, allergic rhinitis and adjustment disorder with depressed mood, and who was limited to performing light work.  Bauer testified that such an individual could not perform plaintiff's past work but could perform hundreds of other jobs, including 1,600 optical salvager jobs, 2,310 shipping and receiving jobs and 1,300 price marker jobs in Wisconsin, all of which were light and unskilled.  AR 351-352.  The administrative law judge then added the limitation of being allowed a change of position from standing to sitting for one to five minutes after standing for a period of 45 minutes.  Bauer testified that the

12

individual could perform the optical salvager jobs and 800 tooth inspector jobs, both of which allowed the work to be performed either sitting or standing. AR 353. Bauer acknowledged that although the Dictionary of Occupational Titles does not identify jobs allowing for a sit or stand option, her response concerning the sit or stand option was based on her personal experience. In all other respects, she said, her testimony had been consistent with the Dictionary. AR 355.

### D.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. See 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 21, 2001 through her date last insured of March 31, 2007. AR 20. At step two, he found that plaintiff had the severe impairments of fibromyalgia with diffuse myalgias and restless leg syndrome;  degenerative disc disease of the lumbar spine, status post 1999 lumbar laminectomy; obesity with deconditioning; and carpal tunnel syndrome, status post right release. The administrative law judge found insufficient evidence that plaintiff had any severe mental impairment, noting the lack of treatment for depression or signs and symptoms to support significant limitations in the ability to engage in basic work activities. At step three, the administrative law judge found that plaintiff did not have a physical

13

impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 20-24.

The administrative law judge found that plaintiff had the residual functional capacity to perform light, unskilled work allowing for a change of position from standing to sitting for one to five minutes at least every 45 minutes.  He noted that although plaintiff's impairments could reasonably be expected to produce her alleged symptoms, her subjective complaints concerning the severity of her symptoms and limitations were not entirely credible because they were not consistent with the objective medical evidence or the opinions of the examining physicians.  AR 23.  In addition, he noted that plaintiff had not complied with exercise recommendations and reported a level of activity that was inconsistent with a finding of disability.  AR 26.

Relying on the vocational expert's testimony, the administrative law judge found that an individual of plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations, namely optical salvager and tooth inspector.  He also determined that the testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Accordingly, the administrative law judge found that plaintiff was not disabled.  AR 27-28.

14

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

15

### B. <u>Mental Impairment</u>

Plaintiff contests the administrative law judge's determination that she has no severe mental impairment.  In making his determination, the administrative law judge noted that although Desmonde had diagnosed a mood disorder, plaintiff had "no history of formal mental health treatment or counseling from a mental health specialist or hospitalization" and had been treated "only sparingly" by a family physician.  AR 21.  Plaintiff first disputes the administrative law judge's characterization of her treatment as "sparing," arguing that her family doctor's regular prescription of anti-depressants is significant.  Second, she argues that it was improper for the administrative law judge to rely on the sparse evidence of mental health treatment without considering the reasons why plaintiff had not sought treatment.

Although plaintiff's first objection borders on nitpicking, I agree with her second point.  The administrative law judge cannot draw any inferences about an individual's symptoms and their functional effects from a plaintiff's failure to seek or pursue regular medical treatment without first considering the individual's explanations or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment. Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996).  One of the factors to be considered is the plaintiff's inability to afford treatment or lack of access to free or low cost-medical services.  <u>Id.</u>  In this case, there is evidence in the record that plaintiff did not seek mental health treatment because she lacked the financial

16

resources to do so, yet the administrative law judge never discussed it.  Although the commissioner offers a number of arguments why plaintiff's explanation was unsatisfactory, none of this rationale appears anywhere in the administrative law judge's decision.  The Social Security Ruling requires the administrative law judge, not the commissioner's lawyers, to consider the reasons that plaintiff did not seek mental health treatment.  Steele, 290 F.3d at 941.  In failing to do so, the administrative law judge erred.

Nevertheless, the lack of significant mental health treatment was not the only reason that the administrative law judge gave for finding plaintiff did not have a severe mental impairment.  He also carefully considered plaintiff's daily activities, finding that despite her alleged symptoms, she managed a fairly stable home life with no more than mild limitations in her daily activities.  In this regard, he noted that she was independent in her personal care and household management while her husband was traveling and that she performed household chores, gardening and driving.  The administrative law judge found that plaintiff's normal concentration, persistence or pace was evidenced by her capacity to complete multiple tasks during the day including managing the care of multiple pets.  He also noted that her social functioning was normal as shown by her appropriate presentation and cooperation with medical evaluators, contact with friends and family and lack of any history of social difficulty.

17

The administrative law judge also considered the two evaluations of plaintiff by Desmonde and his opinion that plaintiff could not tolerate the stress and pressure of full-time competitive employment.  The administrative law judge found that this opinion was not well supported by objective findings, noting that Desmonde's evaluation did not reveal clear deficits in memory or concentration.  The administrative law judge found that, contrary to Desmonde's opinion, plaintiff was "capable of multi-tasking and innovative ways to produce income" including caring for multiple animals, breeding and showing dogs, selling birds, assisting her husband with store displays and making woodworking crafts to sell.  He also noted that plaintiff's ability to drive long distances to and from a dog show and to and from a store to set up a store display for her husband was evidence that she could endure long periods of work.  Finally, he found that Desmonde did not attribute plaintiff's potential inability to work to her mental symptoms but rather to her chronic pain complaints, which the administrative law judge found not credible.  AR 21.

Plaintiff argues that the administrative law judge should not have rejected Desmonde's opinions simply because the administrative law judge believed deficits in memory or concentration did not affect an individual's ability to handle stress and pressure. Even if the administrative law judge substituted his own opinions for Desmonde's, he did not reach an unreasonable conclusion when he found that Desmonde's opinion lacked evidentiary support.  Desmonde did not record any objective findings suggesting that

18

plaintiff suffered from a severe mental impairment.  Instead, his report noted that plaintiff related appropriately and spontaneously during the interview, dressed appropriately and had good hygiene, seemed well informed about current events, had good insight and judgment and was able to recall both recent events and those that occurred long in the past.  In addition, he gave her a Global Assessment of Functioning score of 55 to 65, indicating only mild to moderate symptoms.  This evidence, combined with Desmonde's statement that plaintiff's ability to work was limited "due to chronic pain" and plaintiff's various daily activities, provides ample support for the administrative law judge's decision to afford little weight to Desmonde's opinion. 20 C.F.R. § 404.1527(d) (amount of weight to be given medical opinions depends on numerous factors, including consistency of opinion with other evidence and degree to which opinion supported by objective evidence); Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (court must allow administrative law judge's weighing of medical opinions to stand so long as he minimally articulates reasons that are supported by record).

Plaintiff contends that the administrative law judge erred both in assessing her mental functioning and in evaluating her credibility because he overstated her level of activity.  She argues that the administrative law judge failed to account for her testimony that she performs her various activities only occasionally or intermittently throughout the day.  Although it is true that administrative law judges should be careful not to place "undue

19

weight" on a claimant's household activities in assessing her ability to hold a job outside the home, "[s]ome weight is appropriate." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006). Thus, although a claimant's ability to perform some work around the home does not prove that she is able to work, neither does her testimony that her activities are punctuated with rest prove that she is disabled. A person performing chores around the house may take breaks because she can, not because she must. It is up to the administrative law judge to determine on which side of the line a case falls. This court must uphold that determination so long as the record reasonably supports it. I cannot say that the administrative law judge placed undue weight on plaintiff's activities. The sum of plaintiff's varied and fairly strenuous activities, which included gardening, traveling long distances, stocking display shelves, performing household chores and taking care of numerous birds and dogs, reasonably supports the administrative law judge's conclusion that plaintiff was not as limited as she claimed to be. This is particularly so in light of the medical evidence, which lacks any findings supporting the conclusion that plaintiff has any mental or physical impairment that would prevent her from performing a limited range of light work.

Further, there is other evidence in the record to support the administrative law judge's conclusion that plaintiff's mental health impairment was not severe. Both state agency psychologists who reviewed the record found that plaintiff had only mild limitations in her ability to function and therefore did not have a severe mental impairment and. Bodeau

20

found that she was working at the light to medium level at home in spite of her untreated depression.

In sum, although the administrative law judge erred in not considering plaintiff's lack of ability to pay for mental health treatment and arguably gave too little weight to the treatment she received from her family physician, I am satisfied that the sparsity of plaintiff's mental health treatment did not have a material impact on the outcome of plaintiff's application.  Because the administrative law judge gave other sound reasons for finding that plaintiff had no severe mental impairment, the error was harmless.  Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (doctrine of harmless error applies to administrative decisions).  In addition, the administrative law judge's determination that plaintiff's physical complaints were not fully credible was not patently wrong.  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (court generally must uphold credibility finding unless it is "patently wrong").

## C.  Residual Functional Capacity

The administrative law judge found that plaintiff retained the residual functional capacity to perform unskilled light work "allowing a change of position from standing to sitting for one-to-five minutes at least every 45 minutes."  The determination of residual functional capacity is an assessment of what work-related activities plaintiff can perform

21

despite her limitations.  20 C.F.R. § 404.1545(a)(1).  It must be based on all of the relevant evidence in the record.  Id.  In making his residual functional capacity determination, the administrative law judge stated that he placed great weight on the opinion of Studt, who found that plaintiff could lift 20 pounds, walk up to a half mile and stand or sit for 30 to 45 minutes at a time before having to change position.  The administrative law judge explained that Studt's opinion was generally consistent with plaintiff's own description of her physical abilities and with the findings of Bodeau, Fu and the state agency physicians, who agreed generally that plaintiff could perform light work.

Plaintiff argues that the administrative law judge did not give a reason for finding that after plaintiff rested for no more than five minutes, she could resume standing for up to 45 minutes and continue that sequence for up to six hours throughout the day.  Plaintiff notes that Studt, upon whose opinion the administrative law judge said he was placing great weight, said that plaintiff would need a "change in position" after standing for 30 to 45 minutes, but never said that this change could be as little as a five-minute break to sit down. Although I agree that the administrative law judge did not do the best job explaining how he arrived at plaintiff's residual functional capacity, his rationale is clear enough.  For one thing, Studt did not explain what he meant by a "change in position," so his opinion is not necessarily inconsistent with the one-to-five minute break found by the administrative law judge.  Further, the administrative law judge noted that Studt's report was generally

22

consistent with the state agency examiners, who found that plaintiff could perform light work, and with the opinion of Bodeau, who found no evidence of anything that would limit plaintiff's employability.  In light of the opinions indicating that plaintiff could perform the full range of light work *without* any change of position, it was not unreasonable for the administrative law judge to interpret Studt's opinion in the limited manner he did.

Plaintiff also contends that the administrative law judge failed to properly evaluate the evidence in the record that she was obese, as required by Social Security Ruling 02-1p: Policy Interpretation Ruling Titles II and XVI:  Evaluation of Obesity, 67 Fed. Reg. 57859 (2002).  In this case, the administrative law judge found plaintiff had the severe impairment of obesity but did not make any specific finding as to how it affected her residual functional capacity.

The Court of Appeals for the Seventh Circuit has held that "a failure to explicitly consider the effects of obesity may be harmless error."  Prochaska, 454 F. 3d at 736.  In Prochaska, the court found that because the administrative law judge's decision was predicated upon the opinions of physicians who discussed the plaintiff's weight, and because plaintiff had not pointed to any evidence suggesting that her obesity significantly aggravated her physical impairments or contributed to her physical limitations, the administrative law judge's failure to comply with SSR 02-1p was harmless.  Id.  The court reached the same conclusion in Skarbek, 390 F.3d at 504, explaining:

23

> Any remand for explicit consideration of Skarbek's obesity
> would not affect the outcome of this case.  See Keys v. Barnhart,
> 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error
> review to ALJ's determination).   Notably, Skarbek does not
> specify how his obesity further impaired his ability to work, but
> speculates merely that his weight makes it more difficult to
> stand and walk.  Additionally, the ALJ adopted the limitations
> suggested by the specialists and reviewing doctors, who were
> aware of Skarbek's obesity.  Thus, although the ALJ did not
> explicitly consider Skarbek's obesity, it was factored indirectly
> into the ALJ's decision as part of the doctor's opinions.

As in Skarbek and Prochaska, the administrative law judge's failure in this case to

consider plaintiff's obesity explicitly in determining plaintiff's residual functional capacity

was harmless error.  It is clear from the decision that he was aware of plaintiff's obesity,

insofar as he found it to be a severe impairment.  The physicians and medical consultants

upon whose opinions the administrative law judge relied were aware of plaintiff's obesity yet

determined that she was nonetheless able to perform light work.  Plaintiff argues that the

administrative law judge should have found limitations on her ability to bend, squat and

perform sustained standing on the basis of Studt's report.  However, Studt did not find that

plaintiff could not bend or squat; he found only that she had difficulty doing so.  He did not

include any restriction on bending or squatting in his assessment of plaintiff's ability to

perform work-related activities.  Further, it is plain that Studt accounted for plaintiff's

obesity in forming his opinion with respect to her sitting and standing limitations.  He noted

that plaintiff's obesity played a role in her tiring easily and did not record any clinical

24

findings that would otherwise explain the limits he placed on plaintiff's tolerance for sitting and standing.  Thus, the administrative law judge accounted indirectly for the limitations posed by plaintiff's obesity when he adopted Studt's suggested limitations.  Finally, I note that even if plaintiff is correct that she needs more than five minutes off her feet before returning to standing after 45 minutes, she still could perform the optical salvager and tooth inspector jobs because the vocational expert testified that these jobs could be performed in either a sitting or standing position.  For these reasons, it would be pointless to remand this case for explicit consideration of plaintiff's obesity.  Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005) ("[Once [obesity's] causal efficacy is determined, it drops out of the picture.").

In sum, I find that the administrative law judge did not err in determining plaintiff's residual functional capacity because substantial evidence in the record supports his conclusion that plaintiff could perform light work if she was permitted to sit for up to five minutes at least every 45 minutes.  Further, I find that the administrative law judge's failure to make an explicit finding concerning the effects of her obesity on her residual functional capacity was harmless error.

D.  Step Five

Plaintiff contends that the administrative law judge's step five finding is not supported by substantial evidence.  First, she argues that the hypothetical question posed to the vocational expert was incomplete because it did not include all of plaintiff's limitations. She argues that the question should have included limitations on bending and squatting. However, as discussed above, there is no evidence in the record to support the conclusion that plaintiff had these imitations.  Therefore the administrative law judge did not need to include them in the hypothetical question.  Further, plaintiff has not shown that her obesity further limited her ability to work.  Only those limitations supported by medical evidence in the record need be incorporated into the residual functional capacity finding and the corresponding hypothetical posed to the vocational expert.  Young v. Barnhart, 362 F.3d 995, 1001-02 (7th Cir. 2004); Steele, 290 F.3d at 942.

Second, plaintiff argues that the jobs of optical salvager and tooth inspector may no longer exist because the Dictionary of Occupational Titles has not been updated since 1977. Plaintiff has presented nothing beyond her own unsupported assertion to support this argument.  As a result, I decline to address it.  Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

26

Finally, plaintiff argues that 2,400 jobs in the Wisconsin economy is "hardly a significant number" of jobs.  This argument is neither developed nor persuasive.  In <u>Lee v. Sullivan</u>, 988 F. 2d 789, 794 (7th Cir. 1993), the court found that 1,440 jobs was a significant number, citing cases holding that even fewer than 750 available positions amounts to a significant occupational base.  <u>See also</u> <u>Wells v. Astrue</u>, 2009 WL 142404, *17 (E.D. Wis. Jan. 17, 2009) (slip opinion) (finding 420 jobs in Milwaukee area and 1,300 jobs in Wisconsin to be significant number).  Because the hypothetical question posed to the expert included all of plaintiff's limitations and the expert identified a significant number of jobs in the regional economy that plaintiff can perform, the administrative law judge's step five finding is supported by substantial evidence.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Dawn L. Kittelson's  appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 13th day of March, 2009.

BY THE COURT:
/s/

_____

BARBARA B. CRABB
District Judge